# In the United States Court of Federal Claims

No. 13-881C

(Filed: January 26, 2015)

* * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **TOTAL ENGINEERING, INC.,**<br>  Plaintiff,<br><br>  v.<br><br>**THE UNITED STATES,**<br><br>  Defendant. | Subject Matter Jurisdiction; Contract Disputes Act; Government Claim; Deductive Credit; 48 C.F.R. § 2.101; Contracting Officer's Final Decision; Failure to State a Claim Upon Which Relief Can Be Granted; Rule 8. |

* * * * * * * * * * * * * * * * * * * * * * * * *

Stephen M. Seeger, Peckar & Abramson, P.C., 2055 L Street, N.W., Suite 750 Washington, D.C. 20036, for Plaintiff.

Stuart F. Delery, Robert E. Kirschman, Jr., Deborah A. Bynum, and Jeffrey D. Klingman, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant. Leslie M. Reed and Michael T. Shields, U.S. Army Corps of Engineers, 10 South Howard Street, Baltimore, MD 21201, Of Counsel.

_____

**OPINION AND ORDER**

_____

**WILLIAMS**, Judge.

This action under the Contract Disputes Act ("CDA") comes before the Court on Defendant's motion to dismiss Plaintiff Total Engineering Inc.'s ("Total") Amended Complaint. Plaintiff appeals the Contracting Officer's Final Decision demanding payment of $2,301,209 as a deductive credit due to Total's defective work. Plaintiff alleges that its work was not defective, that the Government's design specifications were flawed, and seeks payment of the contract balance of $737,838.75, which the Government deducted from the amount it claims from Plaintiff.

The Government seeks dismissal, arguing that Total's Amended Complaint raises contractor claims which were not submitted to the Contracting Officer as required by the CDA. Specifically, Defendant contends that both Total's defense of defective specifications and its challenge to the Government's retention of the contract balance should be treated as independent contractor claims. Because Defendant misconstrues Plaintiff's defective specification defense and the Government's set-off of the contract balance as independent contractor claims, the Court denies the Government's motion.

## Background

In early 2009, the United States Army Corps of Engineers ("Agency"), solicited proposals for the construction of the United States Army Medical Research Institute of Chemical Defense Replacement Facility, located at the Aberdeen Proving Grounds in Edgewood, Maryland. Am. Compl. ¶ 4. The Replacement Facility will be the "Department of Defense's lead laboratory for medical chemical defense research, and the location for the development, testing, and evaluation of medical treatments and materials to prevent and treat casualties of chemical warfare." COFD[1] ¶ 1. The work on this project was split into two separate contracts – the Early Site Package and the Primary Building Package. Am. Compl. ¶¶ 5-6. On April 10, 2009, the Agency awarded Total contract No. W912DR-09-C-0030 for the Early Site Package. Id. at ¶ 8. The Primary Building Package was awarded to Clark Construction Group ("Clark"). Id. at ¶ 7.

The contract required Total to perform a variety of work, including demolishing existing structures, removing hazardous materials, excavating soils, installing erosion and sediment controls, and constructing a new steam line system, comprised of a 10-inch steam line and 6-inch condensate line anchored to concrete piers installed parallel to each other inside a concrete trench. Id. at ¶¶ 9, 12-13.

Total Engineering was also required to:

> Submit detail drawings for valve manholes and the piping and equipment in the valve manholes, such as steam traps, valves, sump pumps, pressure gauges, thermometers and insulation, including a complete list of equipment and materials, manufacturer's descriptive and technical literature, performance charts and curves, catalog cuts, installation instructions, and complete wiring and schematic diagrams. Show on the drawings pipe anchors and guides, and layout and anchorage of equipment and appurtenances in valve manholes, and equipment relationship to other parts of the work including clearances for maintenance and operation.

COFD ¶ 7.

---

[1] The Contracting Officer's Final Decision ("COFD") is attached as an exhibit to the Amended Complaint and, pursuant to Rule 10(c), is "part of the pleading for all purposes."

According to the Contracting Officer, several deficiencies in Total's steam line work were brought to Total's attention in late May and early June 2010. Id. at ¶ 10. During a required hydrostatic pressure test, conducted by Total's subcontractor, L.J. Brossoit & Sons, Inc., on June 17, 2010, Agency personnel "saw cracking in the piers, movement of the pipe, and noticed damage on the anchor support in manhole 2." Id. at ¶ 11. It was "evident that the [s]team [l]ine had dislodged from its anchors and concrete piers at several points along the underground portion" of the steam line. Id. Failure of the anchor points resulted in the steam line moving inside its trench. Id. Total alleges that "[t]he Government's faulty pier design – and specifically the Government-furnished drawings and designs for the below-ground pipe and concrete anchor support piers, including Pier 85, and anchor support piers located in Manholes 2 and 4" was the most probable cause of the failure. Am. Compl. ¶ 16.

The Contracting Officer's Final Decision details events that occurred after the hydrostatic pressure test. On June 18, 2010, the Agency, L.J. Brossoit & Sons, Inc., and Total personnel met to discuss alleged deviations from the construction design. COFD ¶ 13. On July 9, 2010, the Government's designer prepared a report, which found that the cause of the construction failures was Total's deficient work.[2] Id. at ¶ 15.

On July 26, 2010, the Contracting Officer issued a cure letter allowing Total 14 days to fix the defective steam line, stating that if Total did not cure the identified work, the Government might elect to terminate the contract for default or modify the contract "to remove unfinished work and assign it to another contractor . . . ." Id. at ¶ 28. According to the Government, Total's work remained "unsatisfactory" during that 14-day period. Id. at ¶ 29.

On August 19, 2010, the Agency issued a change order requiring Total to cease construction of the steam line, stating: "'[g]iven these circumstances, it is the decision of the Contracting Officer to modify the contract to remove the new steam system and all features of the work required to render it operational. This modification will be in accordance with Contract Clause 52.243-4 Changes.'" Am. Compl., ¶ 17. The steam line portion of the contract was then assigned to Clark. COFD, ¶ 31. On October 8, 2010, the Agency sent Total a "Request for Proposal (RFP) – BF" for the amount of a deductive credit. Id. at ¶ 35, 43. Total eventually responded to RFP BF on May 29, 2011, proposing a deductive credit of $80,047.21 and revised its proposal on July 8, 2011, proposing a deductive credit of $521,726.45 for the steam line work removed from its contract. Id. at ¶¶ 45, 48.

After Total submitted a payment request, the Agency sent Total a letter on August 24, 2010, stating that the pending modification for steam system work was anticipated at $425,000 Id. at ¶ 32. On March 28, 2011, the Agency informed Total that "due to the increasing discovery of deficiencies in Total's previous [s]team [l]ine work, the cost to obtain an operable steam line could reach as high as two million dollars ($2,000,000)." Id. at ¶ 42. The Agency terminated Total's contract for default on August 10, 2011. Id. at ¶ 51.[3] On December 28, 2011, the

---

[2]    The Government designer is not identified in the record.

[3]    Total does not challenge the termination for default in this action.

Agency issued a second RFP to Total, which included additional work not previously identified in RFP BF. Id. at ¶ 58.[4] Total's surety responded to this second RFP by letter dated January 11, 2012, detailing reasons why Total should not have to respond to the Government's request.

In a 19-page final decision, dated November 15, 2012, the Contracting Officer rejected all of Total's arguments – the same arguments that Total now raises as a defense to the Government's claim in its Amended Complaint. As recounted in both the Contracting Officer's Final Decision and the Amended Complaint, Total alleges that the steam line failure was due to the Government's defective designs, particularly those for Pier 85 and the anchor support piers in Manholes 2 and 4. Am. Compl. ¶¶ 28-29. The Contracting Officer's Final Decision detailed the faulty installation of the anchor bolts and mislocation of rebar and pier dimensions that deviated from the design. COFD ¶ 12. In his Final Decision, the Contracting Officer considered the surety's argument that the original design for the piers was insufficient, but determined that the design had been revised and Total "failed to ensure that the construction conformed to the revised drawing." Id. at ¶ 59.

In his Final Decision, the Contracting Officer demanded payment in the amount of $2,301,209 "representing the decrease in the Contract amount that Total would have spent to render the Steam Line operable." Id. at 15.[5] This deductive credit reflected what the Government had to pay to Clark to render the line operable, "less any items that were outside of Total's scope of work under the Contract." Id. at 16. The Contracting Officer also rejected all of Total's arguments challenging the reassignment of the work to Clark. Because $737,838.75 remained to be paid to Total under the contract, the Contracting Officer credited the Government with this amount, reducing the Government claim to $1,563,370.25. Id. at ¶ 2.

On November 6, 2013, Total appealed the Contracting Officer's Final Decision to this Court. After the Government filed a motion to dismiss in March 2014, Total filed an Amended Complaint on August 14, 2014, containing one count appealing the Contracting Officer's Final Decision.

## Discussion

### Jurisdiction and Standard of Review

Subject-matter jurisdiction must be established before the Court may proceed to merits. Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572 (Fed. Cir. 1996). If the Court determines that it does not have subject-matter jurisdiction over the claim, the Court must dismiss the action. Adair v. United States, 497 F.3d 1244, 1251 (Fed. Cir. 2007). When deciding a motion to dismiss pursuant to Rule 12(b)(1), this Court must assume that all well-pleaded facts in the complaint are true and draw all reasonable inferences in the non-movant's favor. Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006).

---

[4]   This second RFP is not in the record.

[5]   Where the Contracting Officer's Final Decision does not use paragraph numbers, the Court cites page numbers.

The plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

The Tucker Act grants this Court jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The Tucker Act further provides that the Court of Federal Claims "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [the Contract Disputes Act] . . . on which a decision of the contracting officer has been issued under section 6 of that Act." Id. § 1491(a)(2).

The Government can bring a claim against a contractor by issuing a written decision by a Contracting Officer. 41 U.S.C. § 7103(a)(3) (2012). The Contracting Officer's decision shall state the reasons for the decision reached and shall inform the contractor of the contractor's rights. Id. § 7103(e). In the contents of the decision, "[s]pecific findings of fact are not required. If made, specific findings of fact are not binding in any subsequent proceeding." Id. Once a Contracting Officer issues a decision pursuant to section 7103, the contractor has the option to appeal the decision to the appropriate agency board or the Court of Federal Claims. Id. § 7104. This includes a Contracting Officer's final decision that embodies a Government claim. The contractor may appeal to the Court within 12 months of receipt of the decision, and the action will be reviewed de novo. Id. § 7104(b)(3)-(4).

**The Court Has Subject-Matter Jurisdiction Over the Instant Action**

**Defective Specifications**

The Government argues that this Court lacks subject-matter jurisdiction over Total's suit by attempting to construe Total's defective specifications defense to the Government's claim for a deductive credit as an independent contractor "claim" that must have been submitted to the Contracting Officer. The Government asserts that Total is "effectively alleg[ing] that defective specifications made performance of the steam line work impracticable," and that this allegation should be treated as a claim for the adjustment or interpretation of contract terms.

The Government misconstrues Total's defective specifications defense. Total is not advancing a "claim" for any relief due to defective specifications; it is saying that deficiencies in the steam line were not caused by its workmanship, but by the Government's specifications that it implemented. Am. Compl. ¶ 28. In construing Total's defense to the Government claim as an independent contractor claim, the Government seeks to impose a meaningless duplicative administrative exhaustion requirement not contemplated by the CDA. The Government argues that Total was required to submit its defense to the Government's claim for a deductive credit to the Contracting Officer as a "claim" and obtain a final decision on its so-called "claim" as a prerequisite to bringing suit in this Court. The CDA does not require the contractor to jump through such an extra hoop and refile its defense to a Government claim as a so-called contractor's "claim" where it is not seeking any separate monetary relief or contract adjustment.

5

The Government relies on the language in M. Maropakis Carpentry, Inc. v. United States, stating that "a contractor seeking an adjustment of contract terms must meet the jurisdictional requirements and procedural prerequisites of the CDA, whether asserting the claim against the government as an affirmative claim or as a defense to a government action." 609 F.3d 1323, 1331 (Fed. Cir. 2010). Maropakis is inapposite. Maropakis' only "defense" was its request for time extensions due to alleged Government delay, which both the Court of Federal Claims and the Federal Circuit held was a "claim" for contract modification that had not been the subject of a Contracting Officer's final decision. Id. at 1332. Because the contractor in Maropakis sought an adjustment of contract terms, a contract modification extending the completion date, the CDA's requirement that a "claim" be submitted to the contracting officer applied. Id. at 1331. Unlike the contractor in Maropakis, Total is not seeking an adjustment of contract terms, but is simply defending against a Government claim by arguing that the Government's design – not Total's work – caused any problem. Maropakis does not dictate dismissal of Total's Amended Complaint here because Total is appealing and defending a Government claim, not asserting its own claim for relief.[6]

Although the Government argues that Total, in raising defective specifications as a defense, is in effect making a "claim" for impracticability of performance that requires contract interpretation or modification, no such plea for relief appears in Total's Amended Complaint. In support of this argument, the Government cites cases that involved contractor claims for additional costs associated with performing work pursuant to the Government's flawed design specifications. Mot. to Dismiss at 11 (citing Ace Constructors, Inc. v. United States, 499 F.3d 1357 (Fed. Cir. 2007); Raytheon Co. v. White, 305 F.3d 1354 (Fed. Cir. 2002); Fireman's Fund Ins. Co. v. United States, 92 Fed. Cl. 598 (2010)). These cases present a very different situation than the instant case, as Total does not request any monetary relief due to performing work under the Government's design specifications, but only asserts defective design specifications to rebut the Government's claim that Total's work caused the steam line failure and attendant costs.

Even if the adjudication of this defense were to take the Court down a path of analyzing Government specifications, a favorable resolution of Total's defense would not result in any separate contract adjustment or monetary relief to Total. In pressing its defense of defective specifications, Total does not make a claim as defined by the Federal Acquisition Regulation – it does not seek "as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101 (2012).

---

[6] In a similar vein, the Government cites Raytheon Company v. United States, 747 F.3d 1341 (Fed. Cir. 2014), to argue that Total had to obtain a Contracting Officer's final decision on its defense to a Government claim. Mot. to Dismiss at 10. In Raytheon, the contractor was defending a Government claim for a downward equitable adjustment to Raytheon's segment closing calculations based upon different facts than those underlying Raytheon's own claim, and the Contracting Officer had not considered the circumstances giving rise to the Government's claim. Here, in contrast, the Contracting Officer fully considered the circumstances giving rise to the Government's deductive credit, including Total's position that the Government's design was defective. See COFD ¶ 59.

Additionally, the Government argues that Total's "defective specifications claim requires interpretation of the terms of the contract" because it is necessary to determine whether the allegedly defective specifications are design or performance specifications and whether any alleged defects were patent. Mot. to Dismiss at 11-12. By setting up such a construct for resolving this so-called "claim," Defendant is injecting a controversy where none exists. The parties do not dispute what the specifications say or what they require. Neither party is asking the Court to interpret the specifications. This case is about whether or not Plaintiff complied with the specifications, not what the specifications themselves mean.

The Contracting Officer's Final Decision determined that it was Total's responsibility to submit detail drawings for "valve manholes and the piping and equipment in the valve manholes" and then to perform and submit a computerized stress analysis. COFD ¶¶ 7-8. Total did this. After the Government received Total's stress analysis, the Government designer revised some initial contract drawings and provided these to Total, but, in the Contracting Officer's view, Total failed to ensure that its work matched these drawings, based upon examples of anchors set at wrong depths and grout with the wrong thickness. Id. at ¶ 16. Thus, this case centers on whether Total's work was done according to provided measurements and drawings and what caused the steam line test failure, which are questions of fact, not of contract interpretation.

### Retention of Contract Balance

The Government also contends that because Total challenges the Contracting Officer's withholding the contract balance, Total is making a contractor claim for payment of the contract balance that must be certified. As the Court recognized in Placeway Construction Company v. United States, the Government's retention of the unpaid contract balance is a Government claim that does not have to be certified. 920 F.2d 903, 905-07 (Fed. Cir. 1990) (aff'd in part, vacated in part). Here, the deductive credit, reduced by the remaining contract balance, is a Government claim, and Total's appeal of the Contracting Officer's Final Decision embodying that Government claim does not implicate any contractor claim. As such, the Court has subject-matter jurisdiction over Total's Amended Complaint.

### The Amended Complaint States a Claim Upon Which Relief Can Be Granted

The Government also seeks dismissal of the Amended Complaint for failure to state a claim upon which relief can be granted. Defendant contends that Total has not identified "which drawings or designs were allegedly defective," has not explained "how any such drawings and designs were defective," and has pled "no facts to support its conclusory allegation that the allegedly defective drawings and designs constituted design specifications, rather than performance specifications." Mot. to Dismiss at 13. The Government also argues that Total has not sufficiently pled facts to support its allegations regarding the reprocurement of steam line work from Clark. Id. at 14-16; Am. Compl. ¶ 31.

In general, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers whether the pleadings satisfy Rule 8. Pursuant to Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2);

Gay v. United States, 93 Fed. Cl. 681, 685 n.3 (2010). Although Rule 8 does not require detailed factual allegations, it does demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Iqbal, 556 U.S. at 678.

The Government's call for Rule 8 specificity is misplaced in this quirky CDA realm where a plaintiff is appealing a Contracting Officer's Final Decision on a Government claim. Under this statutory regime, a contractor need not attempt to devise and set forth its own "claim" when it is appealing a Contracting Officer's Final Decision on a Government claim. 41 U.S.C. § 7104 (2012). Here, Plaintiff's appeal of that final decision more than satisfies the notice requirements of Rule 8. The factual allegations Plaintiff is raising are thoroughly set forth in the detailed 19-page Contracting Officer's Final Decision attached to Plaintiff's Amended Complaint. As evidenced by the Contracting Officer's Final Decision, the Contracting Officer had an opportunity to consider both the Government's claim and Plaintiff's defenses and the Contracting Officer's Final Decision put Defendant on notice of Plaintiff's basis for disputing the Contracting Officer's Final Decision.

## Conclusion

Defendant's motion to dismiss is **DENIED**.

The parties shall file a Joint Status Report proposing a schedule for further proceedings by **February 26, 2015.**

/s/ Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**